Miller agt. Stettiner.

## NEW YORK SUPERIOR COURT.

ROBERT T. MILLER and others agt. HENRY STETTINER, impleaded with JOHN W. KAMPS.

.The practice as settled before the Code, and still in force, does not allow of a *motion* to set aside a *summons* on the ground that there is a *misnomer* of the defendant therein. (*This is adverse to Elliott agt. Hart,* 7 *How. Pr. R.,* 25.)
By the 175th section of the Code, the plaintiff, being ignorant of the true name of the defendant, is in all respects regular, although the defendant is misnamed; and the defendant cannot first disclose his true name by his motion papers, and therein ask that the summons be set aside for the *misnomer.*\*

*Special Term, March,* 1861.

MOTION to set aside a summons. This motion is made upon the complaint and the affidavit of Simon Stettiner,

---

\* The 175th section of the Code reads as follows: "When the plaintiff shall be ignorant of the name of a defendant, such defendant may be designated in any *pleading or proceeding,* by any name; and when his true name shall be discovered, the pleading or proceeding may be amended accordingly."

Does this apply to *process* or *summons* by which a party is brought into court, or only to pleading or proceeding? The 173d section provides that "the court may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, *process* or proceeding, by adding or striking out the *name* of any party, or by correcting a mistake in the *name* of a party, or a mistake in any other respect," &c. Evidently the word "process" was not inserted in section 173, and left out in section 175 by accident. If not, section 173, which provides specifically for the very case, contains the only authority under which the court can act in correcting the process. The question then arises whether it is requisite that the defendant should *appear generally* in the action and plead the misnomer in abatement, or *move* the court directly under section 173, without a general appearance, to set aside the summons? It would seem that the latter course would be more in consonance with the provisions of the Code, as the more simple and speedy remedy; because now a plea in abatement is to be tried like any other defence, the distinction between a plea in abatement and a plea in bar being abolished. (*Sweet* agt. *Tuttle,* 4 *Kern.,* 465; *Gardner* agt. *Clark,* 21 *N. Y. R.,* 399.)—REP.

who states that he is the person served with the summons and complaint, and is the co-partner of the defendant Kamps, under the name and firm of Stettiner and Kamps, and that there is no person named Henry Stettiner who is a member of that firm; and the complaint shows that the action is for goods alleged to be sold to the two defendants. And the affidavit of Kamps is also produced, to the effect that his co-partner's name is Simon Stettiner, and that there is no person named Henry Stettiner connected with him in business. Upon the ground, therefore, of misnomer of the defendant Stettiner, who should have been named in the summons and complaint Simon Stettiner, the latter asks the summons to be aside " for irregularity in this, that the said Simon Stettiner, the person on whom said summons was served, is therein named and described as Henry Stettiner, defendant," and for costs of motion, and for such other order or relief in the premises as the court may see fit to grant.

The motion is opposed by affidavits made by one of the plaintiffs and their clerk, and the clerk of the plaintiffs' attorney, in which it is not in terms denied that the name of Stettiner is Simon, and not Henry ; but it is stated that the action is for goods sold to the firm of Stettiner & Kamps ; and the plaintiff states that after much trouble and inquiry, he ascertained the names of the persons composing that firm to be the names set forth in the summons and complaint. His clerk testifies that he went to the place of business of Stettiner & Kamps, and inquired of Stettiner for their card, in order to obtain the names of the members of that firm, and that Stettiner refused to give it, assigning as a reason that the plaintiffs wished to get the names in order to sue them. And the clerk of the plaintiffs' attorney states that the name of Stettiner, as given in the New York City Directory for 1861, is Henry Stettiner, and that he served the summons and complaint upon the defendant, who then told him he was a member of the firm of Stettiner &

Kamps, and thereupon the deponent explained to him that the summons and complaint were intended for him, and the defendant made no suggestion that he was not the person mentioned in the summons and complaint.

John Moody, *for defendant.*
James S. Sandford, *for plaintiffs.*

Woodruff, Justice. When this motion was made, I expressed some surprise that counsel had deemed a motion to set aside the process or proceedings in a cause, on the ground of misnomer of the defendant, warranted by any existing practice, and intimated that since I came to the bar, I had not known of such a motion. I was therefore surprised when my attention was called to the case of *Elliott* agt. *Hart*, (7 *How. Pr. R.*, 25,) in which such a motion was granted, and have been induced thereby to examine the subject.

For more than thirty-five years past no such motion has been entertained in this state, with the exception above referred to; and it was declared by Justice Woodworth, of the supreme court, in 1825, that such a motion was without precedent in that court.

In *Mann* agt. *Carley*, and *Chapin* agt. *Carley*, (4 *Cow. R.*, 148,) the defendant was called in the capias by a wrong christian name, and was declared against by his true name, and motions were made on his behalf to set aside the proceedings on that ground; and in one of the cases in which the defendant had not appeared before making his motion, the motion was granted. On that motion the English cases and books of practice on the subject were very fully cited, and the court, although the motions were novel and without precedent in this state, and not of very ancient date in the English courts, and although the court disapproved of the practice, yet deemed it advisable to follow the English practice in the case then before them, deeming that prac-

tice, though modern, yet of sufficient antiquity to be binding in this state until abrogated by some rule, order or decision on the subject. It would seem to me that the fact that the motion was, in this state, without precedent, and the practice disapproved, would have warranted the court then in saying that the evidence that it had never been adopted in this state, or if it was the practice in England when the practice of their courts was made the practice in the supreme court, it had gone into disuse, or having never been used, had been already and long since abrogated.

Be this as it may, the court will not entertain such a motion, but will leave the defendant to his plea in abatement.

By no action of the court, that I can discover, has the practice enjoined by that order ever been changed, and from that time, February, 1825, until the present, I find no trace of any such motion, with the exception above referred to. Soon after the above order, it was provided by statute that when the name of any defendant shall not be known to the plaintiff, a *capias ad respondendum* may be issued against such person by a fictitious name. (2 *R. S.*, p. 347, § 3.) Under this statute it is clear that no motion to set aside the process on the ground of a misnomer of the defendant, could be entertained ; and unless this statute is repealed by a section of the Code hereafter to be noticed, it is still in force. Accordingly, it was said by the court in *Waterbury* agt. *Mather*, (16 *Wend. R.*, 613,) that if the parties are before the court, if all or any of them be misnamed, the only way to make the objection good is by plea in abatement ; although if the misnamed defendant was not served, his co-defendant might, under the system of practice then in use, take advantage of the variance between the proceedings and the proofs on the trial. And although the order of February, 1825, forbidding a motion to set aside the process on the ground of misnomer of the defendant, does not appear to have been incorporated in

the body of the written rules afterwards from time to time promulgated, yet the practice conformed thereto; and the rules of 1829, adopted in October, to take effect January 1st, 1830, (framed for the purpose of adapting the practice to the Revised Statutes, which then went into operation,) provide, in No. 72, that in cases not provided for by statute or these rules, the proceeding shall be according to the customary practice as it has heretofore existed.

It had become settled practice, originating in the disapproval of the court above stated, the absence of previous precedent in this state, and the order of February, 1825. And the language of the court in *Waterbury* agt *Miller*, in 1837, that " the only way to make the objection good is by plea in abatement," affirmed the practice as settled, although not embodied in the written rules. The revision of the rules made in 1845 do not, as I perceive, contain any saving in terms of pre-existing practice, but they cannot be deemed to abrogate a practice then long established, which was not dependent upon any court rule, which was the subject of revision, any more than they should be regarded as abrogating the entire system of practice, a small portion of which was then to be found prescribed in the written body of rules in use. But in the revision of July, 1847, under the new constitution and the judiciary act, it is expressly provided that in cases not provided for by statute nor those rules, the proceedings shall be according to the customary practice as it has heretofore existed in the supreme court in cases not provided for by statute or the written rules of the court. (*No.* 103.)

So that down to the adoption of the Code of Procedure no such motion as the present could be entertained. Such motions had been declared without precedent—had been disapproved—and by express order of the court prohibited, and the practice had been settled and confirmed. And it is proper to add, that in the very case which constituted the solitary instance which had been before the court, and

which led to the order of prohibition, the question may be regarded as one of variance between the declaration and the process, and not a naked case of misnomer of defendant. It was a case in which the plaintiff had sought to anticipate and avoid the effect of a plea in abatement by declaring against the defendant by his true name.

The Code of Procedure took effect in 1848, and by section 389 of that Code, and again by section 469 of the Code of 1849, *et seq.*, it is enacted that the practice of the courts in civil actions shall continue in force when consistent with the Code, subject to the power of the courts to alter, &c.

And the court, by the rules first adopted under the Code, August 4, 1849, re-enact the former provision that in cases not provided for, the former practice shall prevail, (*No.* 92,) and the same provision has been continued in each revision of the rules to the present time. (*Rule* 93 *of the present rules.*)

Unless, then, the Code itself is in its provisions inconsistent with the order of February, 1825, that " the court will not entertain a motion to set aside the process or proceedings in a cause on the ground of a misnomer of the party arrested," then the practice under that order still continues.

I perceive nothing in the Code inconsistent with the practice heretofore existing on this subject. A doubt is suggested in *Elliott* agt. *Hart*, (*ubi supra*,) whether under the Code any remedy by plea in abatement now exists. I think the doubt is not warranted. The Code has not limited the defences which a defendant may interpose. It has given the grounds of demurrer, and provided that if they do not appear on the face of the complaint, they may be set up by answer ; but defences which, from their nature, cannot appear on the face of the complaint, and which are sufficient in law, may still be set up in the answer. Defences are numerous which are *not* included in the enumeration

of grounds of demurrer, and it would be both absurd and unjust to hold, that because they are not included in that enumeration, therefore they are no longer available ; former judgment, payment, release, may be named as examples.

Again : the provision of the Revised Statutes above referred to, has been re-enacted in the Code, (§ 175,) which provides that when the plaintiff shall be ignorant of the name of a defendant, such defendant may be designated in any pleading or proceeding by any name, and when his true name shall be discovered, the pleading or proceeding may be amended accordingly.

If there were doubt upon the general question I have considered, this section would be, in the present case, conclusive ; the plaintiffs' affidavits go far to show that in truth the defendant is known by the name of Henry Stettiner, and recognized that as his name when sued ; but if his name be Simon Stettiner, and only Simon Stettiner, then the plaintiff was ignorant of his true name, and not only ignorant after diligent efforts to ascertain his name, but designedly kept in such ignorance by the defendant himself when applied to. The evidence shows a design on the part of the defendant to conceal his name, either to defeat the plaintiffs' suit, or to embarrass him in its prosecution. It is, then, a clear case for the application of the 175th section, if Simon be the true name of the defendant, and the plaintiff is perfectly regular. He is by the motion papers themselves apprised that the defendant claims that his true name is Simon. I cannot set aside the summons and complaint because it does not contain the true name of the defendant, when the Code in very terms warranted the plaintiff in suing him by *any name.* It may possibly be that under this section, if a defendant, whom the plaintiff in ignorance has sued by a wrong name, applies to the plaintiff and discloses his real name, and asks that the proceedings may be amended, might, if the plaintiff refused, apply to the court to direct an amendment. On that ques-

Miller agt. Stettiner.

tion I express no opinion; but a defendant thus sued can not for the first time disclose his name in the motion papers and ask thereupon that the plaintiffs' proceedings, which are in all respects regular, should be set aside. Neither do I express an opinion upon the question whether, when there is a variance between the summons and complaint in respect to the name of the defendant, a motion to set aside the latter would be proper. Many of the cases in England, supposed to warrant the motion here made, were cases of variance.

My conclusions are, that the practice as settled before the Code, and still in force, does not allow of a motion to set aside a summons on the ground that there is a misnomer of the defendant therein; and that under the 175th section of the Code, the plaintiff being ignorant of the true name of the defendant, is in all respects regular, although the defendant is misnamed; and that the defendant can not first disclose his true name by his motion papers, and therein ask that the summons be set aside for the misnomer.

The motion is therefore denied, with $10 costs.

ERRATUM.

Page 178 the word " do" after Pennsylvania, in the 6th line from the top should be struck out.