Nicholas M. Pette, J.
Defendant Northern Insurance Company of New York (hereinafter referred to as “Northern”) moves to dismiss the complaint on the grounds that plaintiff, has no legal capacity to sue; that the court lacks jurisdiction over the subject matter of the action; that the complaint fails to state a cause of action, and that documentary evidence exists providing a defense thereto. Defendant moves pursuant to rule 3211 of the Civil Practice Law and Buies.
This is an action for a declaratory judgment on a policy of fire insurance covering a house, its contents, a garage, and loss of use and rental value. Northern issued its policy of insurance *457 in the name of “ Estate of Frank Pallante” as the insured. Plaintiff is a devisee of the insured property under the unprobated will of Frank Pallante, deceased. The probate is being contested by the defendant Aurora Locke and has not yet been heard in the Surrogate’s Court, Queens County.
The policy of insurance contains a clause limiting any cause of action thereon to be commenced within one year from the date of the fire, to wit, August 16, 1962. Northern did not disclaim liability under the policy until July 22, 1963, by mail received after that date.
Plaintiff and the defendants Thomas Pallante and Aurora Locke are the only children and heirs at law of said Frank Pallante, deceased.
Plaintiff sues in her individual capacity and has joined her brother Thomas Pallante, who is named as executor in said unprobated will, and her sister Aurora Locke, who has filed objections thereto, as interested parties in order to comply with the 12 months ’ limitation of the policy and to avoid a forfeiture. The action was commenced on August 13, 1963, within said one-year limitation.
Plaintiff, in her complaint, alleges the issuance of the policy, the fire loss, due compliance with the terms of the policy, and defendant Northern’s refusal to pay. She further alleges her own interest in the insured property as devisee and of the interest of the defendants Thomas Pallante and Aurora Locke in the event the will is not admitted to probate, and requests a judgment declaring and adjudicating the rights of the parties, and contends that all the necessary parties to this controversy are before the court.
Plaintiff further alleges that by its conduct in delaying negotiations for settlement and its investigation of her claim and belatedly rejecting her claim by letter dated July 22, 1963, defendant Northern deliberately calculated to waste the period of limitation within which to bring suit so that it will avoid payment under said policy, and she invokes the aid of equity to prevent this alleged unjust result. She further alleges that this action was commenced before the appointment of a representative of the estate of Frank Pallante, deceased, to avoid any dispute or forfeiture by virtue of the policy provision limiting the time within which to commence this action.
In her affidavit in opposition to this motion, plaintiff contends that her individual interest as devisee was contemplated at the issuance of the policy and that the use of the words “ Estate of Frank Pallante as Insured ” was intended to cover not only her own interest but such other interest as may appear after *458 the probate or nonprobate, as the case may be, of said purported will of Frank Pallante,
Plaintiff further contends that when the policy was issued the same was intended to cover the risk of fire for the benefit of the interested persons in the estate of Frank Pallante j that defendant Northern then knew the will was not yet probated and was well aware of the plaintiff’s status as devisee or heir at law and knew all of the details of the estate proceeding in the Surrogate’s Court at the time of its examination of the plaintiff; that Northern never demanded proof of the existence of a legally appointed representative of the estate of Frank Pallante* and it did not deal with a legally appointed representative at any time, but always dealt with plaintiff. In Support of her contention plaintiff urges that:
“ The solution of the question raised by this contention depends upon the scope and meaning to be given to the words ‘ Estate of 0, Richards contained in the policy.
“ The policy was valid, although no particular person was named therein as the assured. Clinton v. Hope Ins. Co., 45 N. Y. 454; Weed v. L. & L. Fire Ins. Co., 116 id. 106.
“ What is the precise significance of the word 1 estate ’, whan used as it is here, has not been determined in any ease, and the law has not assigned to it any definite meaning. It is an indeterminate word, the precise meaning of which is to be ascertained from the circumstances under which it is used. It may be used to represent the interest of administrators in personal estate, or the interest of widow and heirs in real estate, or the interest of all these in both personal and real estate, and the scope to be given to it will depend largely upon the persons who procured the policy, and the purpose for which it was procured. Here the plaintiff knew of the trust deed. He needed an insurance covering all the interests in the property. He could have had no purpose to insure any particular or limited interest. It was difficult, if not impossible, to specify what particular interest the administrator or the heirs or the trustee had, and hence the comprehensive word 6 estate ’ was used to cover all the interests. The plaintiff procured this insurance through an insurance broker* and it does not appear that he had any negotiation in reference thereto with the defendant or its agent, He must, therefore, be presumed to have chosen the phrase inserted in the policy, and the defendant assented to it and must be held to have assented to its use in the most comprehensive sense that will give validity to the policy. In the absence of proof it cannot be assumed that the defendant used the phrase in any restricted souse and certainly not in a sense which would render the policy *459 void ab initio. The estate of one who dies intestate may mean all the property which he leaves for his widow, heirs, next of kin and creditors,— the whole body of his property as he leaves it at his death.
‘ ‘ In Clinton v. Hope Ins. Co., supra, the policy was procured by an administratrix upon real and personal property on her behalf and for the benefit of the widow and heirs of the intestate, and the premium was paid out of the estate, and it insured ‘ The Estate of Daniel Boss ’. Evidence was given showing that the intention of the parties was to effect an insurance upon both real and personal property for the benefit of the widow and children of the intestate, and it was held that the policy covered the interests of the administratrix, widow and children in the property insured and destroyed by fire; that they were sufficiently described under the words ‘ Estate of Daniel Boss ’; that where the designation of the assured may be applicable to several persons, or if the description of the assured is insufficient or ambiguous, so that it cannot be understood without explanation, extrinsic evidence may be resorted to to ascertain the meaning of the contract, and that when thus ascertained it will be held to apply to the interest intended to be covered by it, and they will be deemed to be comprehended within it who were in the minds of the contracting parties.” (Weed v. Hamburg-Bremen Fire Ins. Co., 133 N. Y. 394.) (Italics supplied.)
Plaintiff also cites the case of Clinton v. Hope Ins. Co. (45 N. Y. 454) in support of her contention that as an heir at law of Frank Pallante, deceased, or as the devisee of the insured property, she must be deemed to be included within the comprehensive phrase “ Estate of Frank Pallante ”. In the Clinton case, the policy was made payable to the estate in the same manner as in the case at bar. In that case the personal interest of the heir at law was held to be insured even though the policy was made to the estate, and the plaintiff was also permitted to show that the estate was sufficient so that no claim could have been made for debts or administration expenses thereby leaving the individual interests free and clear. In the Clinton case, the court stated (pp. 460-461):
“ If the name of the person for whose benefit the insurance is obtained does not appear upon the face of the policy, or if the designations used are applicable to several persons, or if the description of the assured is imperfect or ambiguous, so that it cannot be understood without explanation, extrinsic evidence may be resorted to, to ascertain the meaning of the contract; and when thus ascertained, it will be held to apply to the interests intended to be covered by it, and they will be deemed to be *460 comprehended within it who were in the mind of the parties when the contract was made. [Citing cases.]
“ The evidence leaves no doubt as to the persons intended by the designation ‘ the estate of Daniel Boss.’
“ The agent of the defendant, to whom the application was made, was informed that the insurance was desired for the benefit of the widow and heirs of Daniel Boss; the policy was subsequently issued by him, and the language used to designate the assured was inserted by him without instructions from them.”
Defendant Northern, in its moving affidavit, states: “When the prior policy came to expiration, the company was advised that Mr. Pallante had died some months previously, that his estate was being probated and, therefore, coverage was continued in the name of the ‘ Estate of Frank Pallante. ’ ”
Defendant Northern has conceded that “ The policy in question was issued * * * by a duly authorized agent of the defendant Northern, Blairstown Ins. Agency, Blairstown, New Jersey.”
In her opposing affidavit plaintiff avers that the conversation she and her husband had with the agent of defendant Northern in renewing said policy is material and admissible. She avers that she and her husband informed the agent that her father had died; that her father, Mr. Pallante, in his will devised the property and contents to be insured to her personally, but that the will had not been probated; that the issuance of the policy to the estate of Frank Pallante was the agent’s suggestion and it was intended to cover her own interest or such interests as might develop owing to the pending probate; that the aforesaid information was imparted to said agent in direct answer to the agent’s request for information as to the status of the estate.
Plaintiff contends that it is apparent that it was the intention of the defendant Northern to cover the risk with full knowledge that the comprehensive word “ estate ” was used to cover all of the possible interests explained to its agent.
Defendant Northern, in its moving affidavit, also states: “ The only obligation under the contract is to pay a loss (absent a defense under the policy) to the Estate of Frank Pallante.” The notice of claim herein, it appears, was duly filed in the name of the estate of Frank Pallante and that said claim has not been paid; that if an action were not commenced promptly, after defendant Northern rejected said claim, the rights of all the interested parties would be severely prejudiced, if not destroyed, by reason of the 12 months’ limitation within which to institute suit contained in the policy.
*461 It appears that at all times the transactions between defendant Northern were through plaintiff acting for the estate of Frank Pallante, and in its notice of examination of plaintiff dated March 27, 1963, defendant Northern requested, among other things, “ copy of the will, copy of all probate proceedings in connection with the estate of Frank Pallante ’ ’. At her examination under oath held on April 26, 1963, plaintiff fully disclosed her interest and the consent of all the interested parties in the estate was duly offered to defendant Northern for the payment of said claim, and such consent has never been refused and is still available.
It further appears that the individual defendants Thomas Pallante and Aurora Locke, in their answers, have prayed for the same relief plaintiff has demanded in the complaint and plaintiff contends that they therefore waived their objection to not being requested to join as plaintiffs.
The defendant Thomas Pallante submits an affidavit herein in which he alleges that preliminary letters testamentary on the estate of Frank Pallante, deceased, were issued to him out of the Surrogate’s Court, Queens County, on October 14, 1963, pursuant to section 153-a of the Surrogate’s Court Act which became effective as of September 1, 1963. Said preliminary executor applies for leave to be joined as a party plaintiff in this action and for leave to serve a supplemental complaint.
The preliminary executor alleges that pending the determination of the contested probate proceedings in the Surrogate’s Court, Queens County, it is now his duty, as such preliminary executor, to take all necessary steps to protect the interests of said decedent’s estate in the property insured by defendant Northern’s policy, and that in order to perform said duty, he should be afforded a reasonable time within which to make an investigation of the situation herein and to prepare and serve a supplemental complaint.
The estate of Frank Pallante was joined in this action by plaintiff as a party defendant, as was Thomas Pallante. Since Thomas Pallante is now the preliminary executor of said decedent’s estate and asks to be joined as a party plaintiff and permitted to serve a supplemental complaint as such, this court is of the opinion that the interests of justice will be served by dropping him and the estate as defendants and joining them as party plaintiffs herein, with leave to serve a supplemental complaint.
Former section 192 of the Civil Practice Act, material parts of which are now embodied in section 1003 of the Civil Practice Law and Rules, enjoins the court from defeating a cause of *462 action, among other formal errors by the pleader, for nonjoinder or misjoinder of parties. Said statutes were intended to preserve a right which would otherwise be completely destroyed by combination of the expiration of a Statute of Limitations and the rigors of outright dismissal because of the form in which a claim has been presented. (Cf. McAllister v. Watson, 187 Misc. 393; Marrero v. Levitt, 3 Misc 2d 555, citing Wolff v. Brontown Realty Corp., 281 App. Div. 752 [2d Dept.]; Spaulding v. First Nat. Bank, 210 App. Div. 216 and other cases.)
Section 192 of the Civil Practice Act provided: “No action or special proceeding shall be defeated by the nonjoinder or misjoinder of parties except as provided in section one hundred ninety-three. New parties may be added or substituted and parties misjoined may be dropped by order of the court at any stage of the cause as justice may require.”
Section 1003 of the Civil Practice Law and Buies also contains part of former section 192 of the Civil Practice Act and reads: “ Nonjoinder of a party who should be joined under section 1001 is a ground for dismissal of an action without prejudice unless the court allows the action to proceed without him under the provisions of that rule. Misjoinder of parties is not a ground for dismissal of an action. Parties may be added or dropped by the court, on motion of any party or on its own initiative, at any stage of the action and upon such terms as may be just. The court may order any claim against a party severed and proceeded with separately. ’ ’
Motions to add a proper party plaintiff and to grant leave to serve a supplemental complaint should be granted with liberality to the end and purpose that a party may have his day in court and afforded the opportunity to raise and have determined all questions affecting the subject matter of the litigation, and to put the complaint in the proper shape it should be. (Cf. Albano v. Michaelsen, 14 Misc 2d 76.) Claims, such as the claim at bar, can be substantially, if not entirely, outlawed by the limitation contained in the contract of insurance here, unless the salutary result effectuated by the Legislature in enacting section 1003 of the Civil Practice Law and Buies is adhered to.
Both the law and equity are intended as the means to effect justice, not as instruments to further or countenance injustice. Paramount consideration should be given to substance rather than procedural technicalities urged to defeat justice by denying parties their right to their day in court on the merits where, as here, there appears to be merit to the claims of both the plaintiff and the preliminary executor.
*463 Although Thomas Pallante, as such preliminary executor of the estate of Frank Pallante, deceased, has made no formal cross motion herein for the relief he has requested in the affidavit submitted, this court, in the exercise of discretion and in the interest of justice, will treat the same as a cross motion for the relief requested and grants such relief.
Thomas Pallante and the estate of Frank Pallante are accordingly dropped as parties defendant, and Thomas Pallante, as preliminary executor of the estate of Frank Pallante, deceased, and the estate of Frank Pallante, deceased, are hereby joined as party plaintiffs in this action and permitted to serve a supplemental complaint herein within 20 days from the service upon the attorneys for the defendants Northern Insurance Company of New York and Aurora Locke of the settled order to be entered herein.
Decision on defendant Northern’s motion is held in abeyance for further consideration until after the service of said supplementary complaint by said preliminary executor of the estate of Prank Pallante, deceased, and the service of answers or answering affidavits thereto by defendants Northern and Locke within 10 days from the service of a copy of said supplementary complaint upon their attorneys, and copies of said pleadings and other memoranda are submitted to this court for its consideration thereof in connection with the further consideration of defendant Northern’s motion herein.